854 P.2d 253

**Elizabeth GUNTER, Plaintiff–Respondent,**

v.

**BOARD OF TRUSTEES, POCATELLO SCHOOL DISTRICT NO. 25, Defendant–Appellant.**

**No. 19688.**

Supreme Court of Idaho,
Boise, February 1993 Term.

June 10, 1993.

Imhoff & Lynch, Boise, for defendant-appellant. Kirtlan G. Naylor, argued.

Green Law Offices, Boise, for amicus curiae, Idaho School Boards Ass'n, Inc. Cumer L. Green, argued.

Hon. Larry EchoHawk, Atty. Gen., Elaine F. Eberharter–Maki, Deputy Atty. Gen., argued, Boise, for amicus curiae, State Superintendent of Public Schools and State Dept. of Educ.

Stoel, Rives, Boley, Jones & Grey, Boise, for plaintiff-respondent. Kathy Perkins Brooks, argued.

TROUT, Justice.

Elizabeth Gunter, a school teacher for Pocatello School District No. 25 (the "District"), sued the District after it failed to renew her employment contract for a fourth consecutive year. The trial court granted Gunter's motion for summary judgment ruling that the District was required to place Gunter on probation before terminating her and the District's failure to do so was a breach of the duty of good faith and fair dealing implied in Gunter's employment contract. On appeal, the District contends the trial court improperly granted summary judgment because probation was not a prerequisite to the non-renewal of Gunter's contract. The District further argues that it did not violate a duty of good faith and fair dealing implied in Gunter's employment contract.

## I.

### FACTS

Gunter was employed by the District as a school teacher at Lincoln Elementary for the school years 1986–87, 1987–88 and 1988–89. In August of 1988, Gunter underwent back surgery. She was unable to begin teaching during the 1988–89 school year until March 7, 1989, approximately ten weeks prior to the end of the school year. Following her return to school and as part of her annual evaluation, Gunter and her class were observed by Lincoln Elementary principal John Leasure on three occasions: March 13, March 30, and April 10, 1989. Leasure recommended the District not renew Gunter's contract for the following year and the District adopted this recommendation on April 12, 1989.

Gunter was informed of the District's decision not to renew her contract at a conference with Principal Leasure on April 19, 1989. Gunter was given two letters explaining the reason behind this decision. The first letter, dated April 17, 1989, was

from the superintendent for the District. The letter informed Gunter that the reason she was not being re-employed was because her relationship with "students, staff and parents is such that the Board of Trustees feels that it is to the best interest of [the District] and the educational process within the schools that you do not continue as a certified employee of the District." This letter also informed Gunter of her right to an informal review of this decision before the Board of Trustees. The second letter, dated April 18, 1989, was from Principal Leasure. The letter stated that Leasure had recommended the District not renew Gunter's contract for the 1989–90 school year because Leasure did not believe Gunter's "relationship with students has improved and the enthusiasm for teaching and learning is not present."

Gunter received a copy of an evaluation report on May 1, 1989. This report, prepared by Principal Leasure and dated April 28, 1989, provided "[i]t is my feeling that Mrs. Gunter needs to strengthen her enthusiasm for instruction; especially in the core subject areas. This would also create a greater enthusiasm in her students for learning." On May 2, 1989, Gunter received an informal review of the District's decision not to renew her employment after which the District reaffirmed its decision.

## II.

### PROCEDURAL HISTORY

Gunter filed a complaint on November 13, 1989, alleging the District breached her employment contract. Gunter alleged that the District violated I.C. § 33–514 [1] by failing to place her on probation for unsatisfactory performance. Both parties filed motions for summary judgment and on November 28, 1990, the trial court granted summary judgment in favor of Gunter. The trial court held that: (1) probation is a prerequisite to non-renewal of a teacher's contract under I.C. § 33–514 when the reason for non-renewal is unsatisfactory performance; (2) the District violated I.C. § 33–514 by failing to place Gunter on probation after her work performance was evaluated as unsatisfactory; and (3) the District breached its employment contract with Gunter by failing to place her on probation as required by I.C. § 33–514, District Policy No. 7141 [2] and the implied cove-

1. I.C. § 33–514 provides:

> **33–514. Issuance of annual contracts.**—The board of trustees shall establish criteria and procedures for the supervision and evaluation of certificated employees who are not employed on a renewable contract, as provided for in section 33–515, Idaho Code. Such procedures shall require at least one (1) evaluation prior to the beginning of the second semester of the school year and the results of any such evaluation shall be made a matter of record in the employee's personnel file. When any such employee's work is found to be unsatisfactory a reasonable period of probation shall be established by the board after which action shall be taken by the board as to whether the employee is to be retained, immediately discharged, discharged upon termination of the current contract or reemployed at the end of the contract term under a continued probationary status. Notwithstanding the provisions of sections 67–2344 and 67–2345, Idaho Code, a decision to place certificated personnel on probationary status may be made in executive session and the employee shall not be named in the minutes of the meeting. A record of the decision shall be placed in the employee's personnel file. This procedure shall not preclude recognition of unsatisfactory work at a subsequent evalua-

> tion and the establishment of a reasonable period of probation. In all instances, the employee shall be duly notified in writing of the areas of work which are deficient, including the conditions of probation. Through the third year of continuous employment by the same school district, including any specially chartered district, each such certificated employee shall be given notice, in writing, whether he or she will be reemployed for the next ensuing year. Such notice shall be given by the board of trustees no later than the fifteenth day of June of each such year. If the board of trustees has decided not to reemploy the certificated employee, then the notice must contain a statement of reasons for such decision and the employee shall, upon request, be given the opportunity for an informal review of such decision by the board of trustees.

2. The trial court, in its memorandum decision and order, outlined the pertinent portions of District Policy No. 7141 which was adopted by the District in August of 1973:

> Procedure No. 7141, titled Teacher Evaluation and Annual Contract Status, which requires specifically as follows: "During the third year of employment by School District No. 25, each teacher will be formally evaluated at

nant of good faith and fair dealing. The parties subsequently stipulated to the entry of a judgment in the amount of $20,895.00.

On appeal, the District argues the trial court erred in granting summary judgment because: probation is not a prerequisite to non-renewal of a teacher's contract; the District offered affirmative evidence that Gunter's work was satisfactory; and the covenant of good faith and fair dealing does not apply to Gunter's employment contract. In addition, both parties invite this Court to outline what remedies are available to an annual contract teacher if a school district violates I.C. § 33–514 or a district evaluation procedure.

## III.

### A SCHOOL DISTRICT WHICH ELECTS NOT TO RENEW A TEACHER'S CONTRACT ON THE BASIS OF UN- SATISFACTORY PERFORMANCE MUST FIRST PLACE THAT TEACH- ER ON PROBATION PURSUANT TO I.C. § 33–514

There are two categories of public school teachers in Idaho. The first category is comprised of teachers who have served three or more consecutive years in the same school district. These teachers are considered to have attained "renewable" contract status and are entitled to "auto- matic renewal" following the teacher's no- tice of acceptance of renewal as outlined in I.C. § 33–515. The second category is com- prised of teachers who have served less than three consecutive years in the same school district. These teachers are consid- ered "annual" contract teachers and are notified by the district whether they will be reemployed for the ensuing year pursuant to I.C. § 33–514. During the 1988–89 school year, Gunter fell into this second category and was classified as an annual contract teacher because she had taught in

the school district for less than three con- secutive years.

■ Annual contract teachers are gov- erned by the provisions of I.C. § 33–514 which, in part, provides:

When any such employee's work is found to be unsatisfactory a reasonable period of probation shall be established by the board after which action shall be taken by the board as to whether the employee is to be retained, immediately discharged, discharged upon termination of the cur- rent contract or reemployed at the end of the contract term under a continued pro- bationary status.

Amici argue that the above language al- lows a school district to refuse to renew the contract of an annual contract teacher whose work has been unsatisfactory with- out first placing the teacher on probation. Our Court of Appeals considered this pre- cise issue in *Knudson v. Boundary Coun- ty School Dist. No. 101,* 104 Idaho 93, 656 P.2d 753 (Ct.App.1982). In *Knudson,* a teacher, whose contract was not renewed after one year of teaching, brought an ac- tion seeking a writ of mandate to compel the school district to rehire her for a sec- ond year. *Id.* at 94, 656 P.2d at 754. The district had denied the teacher a second- year contract citing parental complaints and "a perceived need for a 'more construc- tive teacher-student relationship' in the classroom." *Id.* In her action seeking a writ of mandate, the teacher alleged the district should have placed her on probation before deciding not to renew her contract. *Id.* The trial court granted summary judg- ment in favor of the district which the Court of Appeals affirmed holding the teacher was not entitled to mandamus re- lief since the teacher had no "clear legal right" to probation as a prerequisite to the district's decision not to renew her con- tract. *Id.* at 100, 656 P.2d at 760.

least two (2) times. The first evaluation must be completed prior to the beginning of the second semester of the school year. The one (1) remaining evaluation must be completed prior to April 15th." Procedure 7141 contin- ues to outline the process when a teacher's work is found to be unsatisfactory. In such

circumstances, the teacher must receive writ- ten notice advising him/her of their status, a statement of the reasons for the unsatisfacto- ry rating, and a list of improvements that must be attained. Additionally, the procedure provides that "[e]fforts shall be made to help the teacher attain needed improvements."

■ *Knudson* is enlightening to our inquiry in the present case in that the Court of Appeals' decision was based on its interpretation of I.C. § 33–513(6), the precursor to I.C. § 33–514. The long standing rule in Idaho is that when the legislature amends a statute, the amendment, absent an express indication to the contrary, is deemed indicative of changed legislative intent. *Nebeker v. Piper Aircraft Corp.*, 113 Idaho 609, 614, 747 P.2d 18, 23 (1987). Section 33–513(6) provided that "when any such [annual contract] teacher's work is found to be unsatisfactory a probationary period shall be established which shall continue until the time for the reissuing of the yearly contract...." In 1984, two years after *Knudson*, the legislature amended I.C. § 33–513(6) and recodified it as I.C. § 33–514. Section 33–514 now provides:

[w]hen any such [annual contract teacher's] work is found to be unsatisfactory a reasonable period of probation shall be established by the board *after which* action shall be taken by the board as to whether the employee is to be retained, immediately discharged, discharged upon termination of the current contract or reemployed at the end of the contract term under a continued probationary status.

(Emphasis added).

Whereas the Court of Appeals in *Knudson* found that under the former I.C. § 33–513(6), "the legislature did not intend to forge a direct link between probation during the school year and the decision by a school board whether to issue a contract for the next year," we now find that the legislature forged such a link by virtue of its amendment of this section in I.C. § 33–514. The plain and unambiguous language of Section 33–514 now provides that an annual contract teacher *shall* be placed on probation for unsatisfactory performance *after which* the school board *shall* retain the teacher, immediately discharge the teacher, discharge the teacher upon termination of the current contract, or reemploy the teacher at the end of the contract term under continued probationary status. The District in the present case was required to place Gunter on probation if they felt her performance was unsatisfactory. Only after probation could the District elect not to renew her contract for the coming year.

## IV.

## THE TRIAL COURT PROPERLY GRANTED SUMMARY JUDGMENT SINCE THE REASON FOR NONRENEWAL WAS GUNTER'S UNSATISFACTORY PERFORMANCE

Prior to evaluating the propriety of the trial court's grant of summary judgment in this case, we first note the long standing standards by which this Court reviews the grant of summary judgment:

Summary judgment is properly granted when "the pleadings, deposition, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether any issue of material fact is in dispute, it is well settled that the facts should be liberally construed in favor of the party against whom summary judgment is sought. In light of this rule, this [C]ourt has held that summary judgment is improper when a conflict in affidavits respecting issues of fact exists, or when the relevant pleading, depositions and affidavits raise any question of credibility of a witness. On the other hand, a mere scintilla of evidence will not create a genuine issue of material fact sufficient to preclude summary judgment. On appeal from an order granting summary judgment, this [C]ourt must construe the evidence presented to the district court liberally in favor of the party opposing the order and accord [that party] "the benefit of all inferences which might be reasonably drawn."

*Straley v. Idaho Nuclear Corp.*, 94 Idaho 917, 918–19, 500 P.2d 218, 219–20 (1972) (citations omitted); *see also McCoy v. Lyons*, 120 Idaho 765, 769–70, 820 P.2d 360, 364–65 (1991).

The District argues that it has come forward with affirmative evidence which creates a material issue of fact as to whether

Gunter's work was satisfactory. The only affirmative evidence identified by the District in support of its argument is the affidavit of Gordon Waford, the District's Director of Personnel. The Waford affidavit, in pertinent part, provides:

9. Based upon the evaluations and observations made by the District during the first two years of Mrs. Gunter's employment with the District; her attitude and concern for her students while she was recuperating from her back surgery; the recommendation made by the District's administrative staff in April of 1989; and, the comparisons of Mrs. Gunter to the substitute teacher who had been teaching her class, your affiant and the administrative staff of the District felt that *even though Mrs. Gunter's work was satisfactory, her overall performance as a teacher, and the fact that she had regressed in the areas of motivation, attitude, enthusiasm, energy levels, and professionalism necessitated recommending to the Board of Trustees that her contract not be renewed.*

10. Your affiant never considered Mrs. Gunter's work and basic teaching skills to be unsatisfactory, nor does your affiant have any knowledge that any other member of the District's administrative staff or the Board of Trustees of Pocatello School District ever considered Mrs. Gunter's work and teaching skills unsatisfactory.

(Emphasis added).

The thrust of the Waford affidavit is that Gunter's work was satisfactory but her performance was unsatisfactory. The District attempted to draw this distinction between unsatisfactory work and unsatisfactory performance in its Memorandum in Opposition to Gunter's Motion for Summary Judgment[3] and at the hearing on summary judgment[4].

■ In the context of professional teachers and the education process, we can find no distinction between the terms "work" and "performance." *Black's Law Dictionary* 1439 (5th ed. 1979) defines "work" as follows:

To exert one's self for a purpose; to put forth effort for the attainment of an object; *to be engaged in the performance of a task, duty or the like.* The term covers all forms of physical or mental exertions, or both combined, for the attainment of some object other than recreation or amusement.

(Emphasis added). For purposes of I.C. § 33–514, "performance" is merely the means by which a teacher's "work" is evaluated and vice versa. Thus, a teacher whose performance is superior is a teacher whose work is superior. Conversely, a teacher whose performance is unsatisfactory is a teacher whose work is unsatisfactory. The trial court correctly noted that any attempt at drawing a distinction between "work" and "performance" is "splitting hairs."

■ Finding no meaningful distinction between "work" and "performance," we next evaluate whether a material issue of fact existed with respect to Gunter's contention that her contract was not renewed because the District determined her work was unsatisfactory. In the April 17, 1989 letter from the superintendent of the District, Gunter was informed that she would not be rehired because of her relationship with students, staff and parents. Gunter received another letter dated April 18, 1989 from Principal Leasure informing her that he recommended her contract not be re-

---

**3.** The District's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion for Summary Judgment provides:

Plaintiff also confuses the term "performance" and the term "work." Idaho Code § 33–514 only deals with the teacher's "work." There is a critical difference which must be considered in determining whether or not probation is mandated by Idaho Code § 33–514.... A teacher's work can be satisfactory,

yet that teacher's overall performance can be unsatisfactory.

**4.** At the November 26, 1990 hearing on the motions for summary judgment, the attorney for the District argued: "The District's affidavit, Mr. Waford's affidavit, also clearly shows that the District felt that [Gunter's] work was satisfactory, but her overall performance was not satisfactory."

**916**

newed because of her relationship with students and her lack of enthusiasm for teaching and learning. The April 28, 1989 evaluation report prepared by Principal Leasure, and considered by the District, stated that Gunter needed to strengthen her "enthusiasm for instruction." The remaining probative evidence on this issue is the Waford affidavit prepared by the District. This affidavit provides that Gunter was not reemployed because of deficiencies in "her overall performance as a teacher, and the fact that she had regressed in the areas of motivation, attitude, enthusiasm, energy levels, and professionalism."

Based on the foregoing, we find that as a matter of law, Gunter's contract was not renewed because the District determined she performed her work in an unsatisfactory fashion. The trial court properly ruled that the District was required to place Gunter on a reasonable period of probation after which action could be taken by the District, including not renewing her contract.

Because of our holding, it is unnecessary to consider whether there was a covenant of good faith and fair dealing implied in Gunter's employment contract and whether the District's action breached such a covenant. Furthermore, we decline the parties' invitation to outline what remedies are available to an annual contract teacher when a school district violates I.C. § 33–514. Given the parties stipulation to the entry of judgment in the amount of $20,895.00, this issue is moot.

## V.

### CONCLUSION

The trial court's order granting summary judgment in favor of Gunter is affirmed.

We award costs to Gunter.

McDEVITT, C.J., BISTLINE and JOHNSON, JJ., and JUDD, District Judge pro tem., concur.