931 P.2d 1232

**Karen TOTMAN, Plaintiff–Appellant,**

v.

**EASTERN IDAHO TECHNICAL COLLEGE, a body corporate and politic of the State of Idaho; Grace Guemple, individually, and in her official capacity as Director of EITC; Trudy Anderson, individually and in her official capacity as CEO over EITC; Bill Robertson, individually and in his official capacity as Associate Director at EITC; Tim Reese, individually and in his official capacity as Marketing Manager at EITC; and John Does I through V, Defendants–Respondents.**

No. 21803.

Court of Appeals of Idaho.

Feb. 3, 1997.

James K. Slavens, Fillmore, UT, for plaintiff–appellant.

Jones Chartered, Pocatello, for defendants–respondents. Jesse C. Robison, argued.

WALTERS, Chief Judge.

Karen Totman was employed as a first-year nontenured instructor at Eastern Idaho Technical College (EITC), a vocational school, during the 1991–1992 academic year. After she received notification of nonrenewal of her contract, Totman filed suit against EITC and its faculty and administrators individually (hereinafter referred to collectively as EITC), alleging breach of contract and of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress and violations of her constitutional rights to due process and free speech. The action was dismissed on EITC's summary judgment motion. Totman appealed from the dismissal order. For the following reasons, we affirm.

## FACTS

After being recruited by EITC in the summer of 1991, Totman entered into a contract of employment with the school for a full-time teaching position. Pursuant to the contract, Totman's employment was for one year, from September 3, 1991, to July 24, 1992, and was to be governed by the terms of the agreement, together with the regulations set forth in the Idaho State Plan for Vocational Education and the policies and procedures of the State Board of Education and of EITC.

Early in the school year, Totman's supervisors became aware of difficulties Totman was experiencing with her teaching responsibilities. Several meetings involving Totman and other faculty members were held, which led to the reassignment of some of Totman's teaching duties. EITC also obtained evaluations by the students in the fall of 1991, the results of which, in Totman's case, were provided to her by memorandum dated January 28, 1992. Totman met with her supervisors to review the evaluations. However, because of continuing difficulties and problems that came to light in the students' evaluations, Totman's immediate supervisor recommended to EITC's director that Totman's contract not be renewed for the ensuing year. On February 26, 1992, EITC formally notified Totman of its decision not to renew her contract beyond July 24, 1992.

Totman was medically treated for symptoms related to stress regarding the nonrenewal of her contract. Shortly thereafter, Totman took a disability leave and did not

return to her teaching position. Totman did not complete her one-year contract which remained in effect until July 24, 1992, despite the notification of nonrenewal.

In February 1994, Totman filed suit against EITC alleging that her dismissal constituted a breach of the parties' contract, breach of the implied covenant of good faith and fair dealing, infliction of emotional distress, and violations of her constitutional due process and free speech rights. Both parties moved for summary judgment, which the district court granted in favor of EITC on the ground that Totman's complaint failed to raise any genuine issues of material fact. The district court entered judgment for EITC, and Totman appealed.

## DISCUSSION

Totman asserts on appeal that the district court erred in awarding summary judgment to EITC on each of the theories of recovery set forth in her complaint, with the exception of her claim of intentional infliction of emotional distress. According to Totman, there remained triable issues of fact for a jury to decide, such as whether EITC had complied with its obligations under the contract, whether Totman had asserted a reasonable expectation of continued employment and whether Totman had suffered a restraint of her right of free speech, making dismissal of her case reversible error.

On review of a grant of summary judgment, we examine the record to determine whether there are genuine issues of material fact and whether the prevailing party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Anderson v. City of Pocatello*, 112 Idaho 176, 731 P.2d 171 (1986); *Herrera v. Conner*, 111 Idaho 1012, 729 P.2d 1075 (Ct.App.1986). Facts in the record and all reasonable inferences drawn from those facts are viewed in favor of the nonmoving party. *Anderson*, 112 Idaho at 179, 731 P.2d at 174. If the record contains conflicting inferences or if reasonable minds might reach different conclusions, a summary judgment must be denied. *Loomis v. City of Hailey*, 119 Idaho 434, 807 P.2d 1272 (1991).

## A. Breach of Contract

■ Totman claims that EITC breached the contract by not conducting performance evaluations. She argues that the policies and procedures which were made a part of the contract required yearly evaluations, without which EITC was unable to implement remedial measures to assist Totman in meeting necessary teaching standards. Totman further argues that EITC breached the contract by not complying with the requirement that the evaluations and subsequent remedial measures must precede any notification of nonrenewal of her contract as a nontenured teacher. Comparing herself to the teacher with an annual contract in *Gunter v. Board of Trustees, Pocatello School District No. 25*, 123 Idaho 910, 854 P.2d 253 (1993), whose discharge could not be sustained until she was granted a period of probation, Totman contends that she is entitled to compensatory relief on account of EITC's breach.

In its memorandum decision granting summary judgment to EITC, the district court found Totman's reliance on *Gunter* misplaced, because the outcome in *Gunter* was determined by a statute that is not applicable in Totman's case. The district court found that the students' evaluations had been completed in the fall of 1991. However, the evaluations normally performed by faculty superiors in the spring of the school year were never done, due in part to Totman taking disability leave after receiving the February 26, 1992, notice of nonrenewal. The district court was not persuaded that the contract required both evaluations to be performed prior to any notification of nonrenewal, and the court concluded that no genuine issues of fact precluded summary judgment on Totman's breach of contract claim.

Section II.F. of the Personnel Policies and Procedures governing Totman's contract calls for performance evaluations to be made in accordance with the regulations found at IDAPA 08.00.B.13,1. Pursuant to the regulations, the yearly evaluations—together with the opinion of higher administrators—will be used as one basis for the final recommendation relative to reappointment, or nonreappointment. *Id.* Totman also relies upon EITC's Policy 110, which requires that each

faculty member shall be evaluated by two or more sources which shall include student and administrative evaluations, and Policy 304 dealing with employment performance counseling, which is provided "under some circumstances."

As stated in the affidavit of Totman's immediate supervisor, Tim Reese, Totman's teaching had been criticized by numerous students in their fall 1991 evaluations. Reese stated that, early on, he noticed that Totman displayed difficulties in carrying out the duties of her assignment, which difficulties were the subject of several meetings with Totman and fellow faculty members. Reese further stated that at the time of the notification of nonrenewal of Totman's contract, faculty evaluations were being conducted; and, to that end, Totman had been given a self-evaluation form which was to be completed and returned. The decision to recommend nonrenewal, therefore, was based on evaluations and assessments, of which Totman was fully aware, from which Reese concluded that Totman was unable to fulfill the teaching requirements for the position for which she was hired and that nonrenewal of her contract would be in the best interest of the students at EITC.

The analysis in *Leon v. Boise State University,* 125 Idaho 365, 870 P.2d 1324 (1994), addresses the timing of faculty evaluations vis-a-vis notice to a nontenured faculty member that his or her contract will not be renewed. In *Leon,* where the supervisor's authority to review Leon's performance other than during the annual review was challenged, the Idaho Supreme Court held:

> This overlooks, however, the fact that the policies and procedures of the state board also require that a faculty member receive twelve months' notice of a contract nonrenewal. IDAPA 08.00.B.12. Leon's interpretation would prevent BSU from making any employment decisions except in the context of an annual review. Additionally, the state board's policies and procedures also provide that the employment of a faculty member who has not attained tenure

is subject to non-renewal with or without cause. *Id.*

*Leon,* 125 Idaho at 369, 870 P.2d at 1328.

As a nontenured faculty member, Totman was entitled to notice of nonrenewal of her one-year term contract "not later than March 1 of the first full academic year of service if the appointment is not to be renewed at the end of the academic year." IDAPA 08.00.-B.12.a. Such notification of nonrenewal is proper with or without cause. IDAPA 08.00.B.12. We concur with the district court's conclusion that Totman's contract did not mandate that the yearly performance evaluations be completed before notice of nonrenewal of the contract may be given, nor was performance counseling guaranteed in the contract. Having determined that EITC adhered to the policies and procedures of the contract in notifying Totman of its decision not to renew her contract, the district court correctly dismissed the breach of contract claim on EITC's motion for summary judgment.

**B. Due Process**

 Totman asserts that EITC violated her due process rights in not renewing her teaching contract without notifying her of problems and affording her an opportunity to correct any deficiencies. Totman also maintains that because she had been promised, both upon being hired and during her employment, that she would only be terminated for cause, she had more than a mere expectation of continued employment.

We look to the terms of Totman's employment contract to ascertain whether Totman had a constitutionally protected property interest in continued employment, which would define her due process rights prior to termination. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Totman's contract set forth a fixed one-year duration, at the end of which time the contract was to expire by its own terms. The policies and procedures governing the contract expressly provided that no contract of employment with a nontenured, nonclassified employee may exceed one year without the prior approval of the Board. IDAPA 08.00.B.4,2,3.a; *Hughes v. Idaho State Uni-*

*versity,* 122 Idaho 435, 437, 835 P.2d 670, 672 (Ct.App.1992). Although Totman's contract was subject to renewal, the decision not to renew the fixed-term contract is a discretionary one, which need not be supported by a statement of reasons and is not grievable by the employee. IDAPA 08.00.B.4,2,3.a,b; *Olson v. Idaho State University,* 125 Idaho 177, 181, 868 P.2d 505, 509 (Ct.App.1994).

Our Supreme Court in *Loebeck v. Idaho State Board of Education,* 96 Idaho 459, 530 P.2d 1149 (1975), held that nothing in the year-to-year contracts or in any statute or institution's rules or policy conferred any legitimate entitlement to tenure or changed Loebeck's nontenured status. *Id.* at 461, 530 P.2d at 1151. Applying the analysis of *Loebeck,* the Court later held that a nontenured university assistant professor did not have a property interest in his employment. *Leon v. Boise State University,* 125 Idaho 365, 370, 870 P.2d 1324, 1329 (1994). *Accord, Olson v. Idaho State University,* 125 Idaho 177, 181, 868 P.2d 505, 509 (Ct.App.1994).

There was no evidence in Totman's case that the board approved her employment beyond the expressed annual term of the contract, even if she was promised continued employment barring a showing of good cause for termination. *See Leon,* 125 Idaho at 369, 870 P.2d at 1328. Totman's one-year contract was not terminated prematurely, but was completed according to its terms. Renewal of the contract was not a right guaranteed to Totman by her one-year contract. *See id.* Therefore, the timely notice of nonrenewal, which was provided to Totman, was the only process to which she was entitled.

## C. Implied Covenant of Good Faith and Fair Dealing

Totman argues that EITC breached the implied covenant of good faith and fair dealing by failing to identify problems in Totman's teaching methods and skills and place her on probation while the problems could be remedied. Relying on *Metcalf v. Intermountain Gas Co.,* 116 Idaho 622, 778 P.2d 744 (1989), she contends that EITC's conduct impaired the benefit of her employment contract, thereby entitling her to damages for breach of the implied covenant.

Having earlier determined that EITC's conduct did not breach the express terms of Totman's employment contract, we necessarily conclude that there was no breach of the implied covenant. Express contract terms are not overridden by the implied covenant of good faith and fair dealing. *Clement v. Farmers Ins. Exchange,* 115 Idaho 298, 300, 766 P.2d 768, 770 (1988); *Olson v. Idaho State University,* 125 Idaho 177, 182, 868 P.2d 505, 510 (Ct.App.1994). We reaffirm our holding that Totman received all of the benefits promised her under her one-year contract. Therefore, with regard to the breach of the implied covenant of good faith and fair dealing, summary judgment was proper.

## D. Free Speech

Totman contends that district court erred in dismissing her claim that EITC violated her right of free speech. Her claim focused not on the nonrenewal notice *per se,* but on admonishments from her superiors at EITC, following receipt of the notice, warning her to discontinue use of her classroom as a forum to air her displeasure with the nonrenewal decision. Totman asserts that as a result of EITC's warnings, she was under an implicit threat of immediate termination. Accordingly, Totman argues that her speech was restrained in violation of the constitution.

The record confirms that Totman's speech was not the motivating factor underlying EITC's decision not to renew Totman's contract. *Compare Hale v. Walsh,* 113 Idaho 759, 747 P.2d 1288 (Ct.App.1987) (jury found Hale's constitutionally protected speech was the cause leading to his dismissal). The district court proceeded to balance the interests of the employee, as a citizen, in commenting upon matters of public concern, and the interest of EITC in promoting the efficiency of the public service it performs through its employees, (in this case, teaching), as outlined in *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983). Thereafter, the district court concluded that EITC's warnings to Totman not to use her classroom as a "soapbox" did not offend the First Amendment.

Pursuant to *Connick*, it was incumbent upon the district court to first inquire whether Totman's speech touched upon a matter of public concern before it would be necessary for the court to weigh the interests of the parties. *Id.* 461 U.S. at 146, 103 S.Ct. at 1689–90. The district court failed to make that threshold inquiry. This failure, however, does not end our analysis. Whether an employee's speech involves a matter of public concern is a question of law which must be determined by the content, form, and context of a given statement, as revealed by the whole record. *Id.* at 147, 103 S.Ct. at 1690. Reviewing the record in that manner in this case, we conclude as a matter of law that Totman was speaking out as an employee upon matters only of personal interest, that is, voicing her dissatisfaction with the nonrenewal decision. Thus, it was not a matter of public concern. Because we agree with the district court's conclusion that EITC did not violate Totman's First Amendment right of free speech, although not upon the district court's analysis, we affirm the summary judgment in favor of EITC on this claim.

## CONCLUSION

We affirm the district court's grant of summary judgment to EITC. Because we are not left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation, *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979), we decline to award attorney fees to EITC under I.C. § 12–121. Pursuant to I.A.R. 40, we award costs to EITC.

LANSING and PERRY, JJ., concur.